Filed 7/23/15  In re Emily S. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re EMILY S., a Person Coming Under the Juvenile Court Law. | B259223<br>(Los Angeles County<br>Super. Ct. No. CK80254) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>　　　　Plaintiff and Respondent,<br><br>　　　　v.<br><br>N.S.,<br><br>　　　　Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Philip L. Soto, Judge.  Reversed.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

_____

Emily S. (Emily) was removed from the custody of appellant N.S. (mother) and placed in a legal guardianship with her paternal grandparents (grandparents) due to, among other things, mother's substance abuse, her emotional instability and domestic violence between the child's parents. When the juvenile court terminated jurisdiction in October 2011, respondent Department of Children and Family Services (DCFS) noted that mother had made some strides on her road toward sobriety. Mother's sobriety, however, was in its nascent stages, and she was unemployed and lacked stable housing. DCFS believed it was not yet safe to return Emily to mother's care. Almost three years later, mother—who had remained sober and now had a stable marriage, employment, adequate housing and had consistently maintained custody of a second child born in December 2011—filed a Welfare and Institutions Code section 388[1] petition seeking reinstatement of juvenile court jurisdiction and the restoration of Emily to her custody. The juvenile court summarily denied that petition.

On appeal, mother contends the court abused its discretion by denying her petition without conducting an evidentiary hearing. We agree and reverse the court's order.

## PROCEDURAL BACKGROUND

Then seven-month-old Emily was detained by the juvenile court in December 2009, after DCFS filed a petition pursuant to section 300, subdivisions (a) and (b). That petition, as ultimately sustained, alleged the child was at risk of harm as a result of domestic violence between her parents, her father's gang activities,[2] and substance abuse on the part of and emotional problems suffered by mother. The referral indicated that in the course of a custody dispute between Emily's parents, mother had been arrested after father claimed she was a drug user and had tried to kill him. Mother claimed father, a

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] Emily's father is not a party to this appeal.

gang member with a warrant for his arrest, was trying to cause problems for her because it was her turn to have Emily.

After juvenile court jurisdiction was established, mother was awarded reunification services, and ordered to participate in parenting, domestic abuse and drug counseling programs with random drug testing, and to undergo a psychological evaluation. She was given at least three three-hour monitored visits per week with Emily, whom the court eventually placed in the care of her grandparents.

In October 2010 reunification services were terminated and a section 366.26 hearing was scheduled, after the parents failed to comply with the case plan.

In January 2011, mother filed her first section 388 petition requesting that reunification services be reinstated or that Emily be returned to her custody. The petition was set for hearing—and denied—in September 2011, after evidence submitted by mother showed she had completed fewer than half of the classes in her domestic violence program, and only two-thirds of the court-ordered substance abuse program.

In October 2011, the court terminated jurisdiction and ordered a permanent plan of legal guardianship for Emily with her grandparents.

In April 2014, mother filed a second section 388 petition seeking reinstatement of juvenile court jurisdiction, and the restoration of Emily to her custody. The petition alleged that mother had married, had a two bedroom apartment, was employed at a pharmaceutical vitamin company, had completed a domestic violence program and had abstained from drug use. No supporting documentation accompanied the petition, which was summarily denied.

On August 8, 2014, mother filed a third section 388 petition seeking reinstatement of juvenile court jurisdiction and the return of Emily to her custody. The petition was accompanied by mother's personal statement and significant documentation supporting her contentions that there had been a material change of circumstance and that it would be in Emily's best interests to be returned to her custody. Mother's section 388 petition was summarily denied on August 14, 2014. The minute order reflects that the petition was denied because mother failed to show new evidence or a change of circumstance,

3

and that the proposed change of order would promote the child's best interest. In addition, the court indicated that the "[c]ase [had been] closed with Kingap [sic] funding on 10-11-11. Funding for minor would be lost if [the] case [were] re-opened."

## FACTUAL BACKGROUND

At the outset of this matter DCFS reported that mother's criminal history consisted of a misdemeanor conviction for domestic violence against a boyfriend in 2007, and a current case involving an incident of domestic violence against Emily's father. Mother, who was 22 years old at the time, acknowledged that she had a history of substance abuse, was a current user of marijuana and had "cut" herself as a teenager.

By the time of the six-month review hearing in September 2010, mother had completed a parenting program and had begun participating in an anger management program. She had also completed a drug program, but had thrice tested positive for marijuana (once after completing the drug program). She maintained regular visitation with Emily, but lacked stable work or housing. Emily had been placed with grandparents since May 2010. DCFS reported that Emily was doing well in grandparents' care, and was developmentally on target. The grandparents monitored mother's visits with Emily, which DCFS reported were "adequate." DCFS, concerned about mother's lack of housing or employment, her failure to complete an anger management program, and her positive drug test notwithstanding completion of a drug program, recommended reunification services be terminated.

The section 366.26 hearing was conducted in February 2011. Mother had continued consistently to visit Emily twice weekly at the grandparents' home. The grandparents had been forced to terminate two visits, once because mother appeared to be under the influence of marijuana and once when she drank a beer during a visit. The grandparents told DCFS that mother generally interacted well with Emily at the outset, but was not always able to maintain her focus on the child throughout the visit and became frustrated when Emily threw tantrums. Still, there was no question that Emily and mother shared a bond. The grandparents were prepared to become Emily's legal guardians and provide her a permanent home.

4

In April 2011, in response to mother's section 388 petition seeking custody of Emily, DCFS reported that mother lived with her two sisters and Emily's maternal grandmother in a one-bedroom apartment. She had graduated from a pharmacy technician program, but had not yet received her license to work in that field. In the meantime, mother worked part-time at a sandwich shop. Mother had completed about half of a year-long anger management/domestic violence program. She had undergone a court-ordered psychological evaluation and, on the evaluator's recommendation, had begun participating in a drug program after relapsing following completion of an earlier program. Mother had last used marijuana in December 2010 or January 2011. DCFS opined that mother was in the early stages of and on the right track toward sobriety, but needed to establish a longer period of sobriety and to secure adequate housing.

In mid-August 2011, DCFS reported that mother continued to visit Emily twice weekly, but only for one hour visits. Mother's housing and employment situations had not changed since DCFS's last report, and she was pregnant again.

In connection with the section 366.26 hearing in October 2011, DCFS reported that Emily's speech had improved markedly as a result of speech therapy she received. Mother's visitation remained unchanged. DCFS recommended that legal guardianship be ordered for Emily with grandparents, and that juvenile court jurisdiction be terminated with Kin-GAP in place.[3]

In support of her August 2014 section 388 petition, mother explained that her circumstances had changed markedly. She had married and she and her husband (not Emily's father) were active in their church. Her two domestic violence convictions had been expunged, she had completed her anger management/domestic violence program and had been drug free since April 2011. Mother was employed by a vitamin company and her husband worked as a union carpenter. The couple had two insured vehicles and

_____

[3] The Kin-GAP program is a state program that provides ongoing funding for children who exit the dependency system to live with relative legal guardians after dependency jurisdiction is terminated. (§§ 11386, 11387.)

mother continued contributing to a savings account she had opened for Emily in 2012.  In addition, mother gave birth to a son in December 2011.  That child had remained consistently in her custody and had regular contact with Emily during her frequent visits to mother's home (one or two days in the middle of every week and every weekend from Friday afternoon to Sunday evening).  Emily loved her little brother very much.  The family lived in a two bedroom home with plenty of space for Emily.

As for why she believed it was in Emily's best interest to be returned to her custody and care, mother explained that Emily's life would be more stable if she lived under mother's full-time care.  The environment at the grandparents' home had changed markedly since the death of Emily's paternal grandfather in 2013.  The home was crowded:  The grandmother's three grown children (each with his or her own family of four) now lived in the home.  The grandmother was not well—she suffered from vertigo and was constantly medicated—and had to work nights.  Emily was left in the care of her uncles, who smoked marijuana in the home when the grandmother was at work.  By contrast, mother had established a stable, drug-free, healthy lifestyle and her home had plenty of space for Emily and would be the best place for her to grow up.

## DISCUSSION

Mother contends the juvenile court abused its discretion in declining to conduct an evidentiary hearing to consider her August 2014 section 388 petition.  We agree.

1. *Controlling law and standard of review*

Under section 388, subdivision (a)(1), "Any parent . . . may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court or in which a guardianship was ordered . . . for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court.  The petition . . . shall set forth in concise language any change of circumstance or new evidence that is alleged to require the change of order or termination of jurisdiction."  "If it appears that the best interests of the child . . . may be promoted by the proposed change of order, . . . the court shall order that a hearing be held . . . ."  (§ 388, subd. (d).)

6

To trigger the right to a hearing on the petition, the parent seeking modification must make a prima facie showing both that there has been a change of circumstances and that the proposed change of order is in the child's best interest. (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 250; *In re Daijah T.* (2000) 83 Cal.App.4th 666, 672.) Section 388 petitions must be "liberally construed in favor of their sufficiency." (Cal. Rules of Court, rule 5.570(a); *In re Daijah T.*, at p. 672.) "[I]f the petition presents *any* evidence that a hearing would promote the best interests of the child, the court must order the hearing. [Citation.] The court may deny the application ex parte only if the petition fails to state a change of circumstance or new evidence that even *might* require a change of order or termination of jurisdiction." (*In re Angel B.* (2002) 97 Cal.App.4th 454, 461 (*Angel B.*); *In re Jeremy W.* (1992) 3 Cal.App.4th 1407, 1414.)

We review a juvenile court's summary denial of a section 388 petition for abuse of discretion. (*Angel B.*, *supra*, 97 Cal.App.4th at p. 460; *In re Josiah S.* (2002) 102 Cal.App.4th 403, 419.)

2. *Mother's prima facie showing entitled her to a hearing on the August 2014 section 388 petition.*

By the time the juvenile court ordered legal guardianship for Emily and terminated jurisdiction in October 2011, DCFS had acknowledged that mother had made significant progress and was "on the right track to a life of sobriety." However, mother had only recently shifted toward sobriety and she lacked adequate housing or steady employment. DCFS determined she needed more time—particularly to maintain her sobriety—before Emily could safely be returned to her care.

The record contains some evidence that by the time the section 388 petition at issue here was filed almost three years later, mother had apparently successfully maintained the sobriety and stability DCFS had hoped for. She now has a steady profession, a stable marriage and home of her own, has remained sober and has had clean drug tests. Further mother has demonstrated an ability to parent by caring for her son born in December 2011, who was almost three years old by the time the instant section 388 petition was filed. Further, Emily was already spending fully half her free time in

7

mother's home and care, and had formed a strong bond with her baby brother. And, significantly, mother's petition alleges that some of the very conditions that led to Emily's detention now exist in her legal guardian's home: she is regularly left in the care of uncles who smoke marijuana while the grandmother is at work.

We find the juvenile court abused its discretion when it summarily denied mother's section 388 petition.[4] The petition sets forth a prima facie case demonstrating new evidence exists or that circumstances have changed materially, and that Emily's best interests would be promoted by restoring her to mother's custody. Mother is employed, has a stable home life and housing, has demonstrated her ability to parent and has maintained a drug-free lifestyle for over three years. Mother made the requisite showing for an evidentiary hearing, and the juvenile court lacked cause to deny her that hearing. A hearing on whether it is in Emily's best interest to return her to mother's home full time will provide an opportunity for the court to evaluate the full picture and to obtain input from the legal guardian, DCFS and minor's counsel.

---

[4] To the extent the record reveals the court's specific reasons for its summary denial, it appears the court mistakenly believed that granting a hearing on the petition would endanger grandmother's ability to continue receiving Kin-GAP assistance. That rationale is not relevant to our determination that mother established a prima facie entitlement to a hearing.

Nevertheless, for the court's edification on remand, we note that grandmother's eligibility for Kin-GAP payments would not cease simply because jurisdiction was reinstated to conduct a hearing on the section 388 petition. (See §§ 11363, subd. (b) [subject to certain conditions, after dependency court terminates jurisdiction and parent files § 388 petition "to change, modify, or set aside an order of the court, Kin-GAP payments shall continue unless and until the juvenile court, after holding a hearing, orders the child removed from the home of the guardian, terminates the guardianship, or maintains dependency jurisdiction after the court concludes the hearing on the petition filed under Section 388"]; 11386, subd. (f) [subject to certain conditions, after termination of dependency jurisdiction, if a parent files a § 388 petition "to change, modify, or set aside an order of the court, Kin-GAP payments shall continue unless and until the juvenile court orders the child removed from the home of the guardian, terminates the guardianship, or maintains dependency jurisdiction after the court concludes the hearing on the petition . . . ."].)

8

We reverse the order denying mother's August 8, 2014, section 388 petition and remand the matter for an evidentiary hearing on that petition. We express no opinion as to the outcome of that hearing.

**DISPOSITION**

The order denying N.S.'s August 8, 2014, Welfare and Institutions Code section 388 petition is reversed and the matter remanded for an evidentiary hearing on the petition.

NOT TO BE PUBLISHED.

JOHNSON, J.

We concur:

ROTHSCHILD, P. J.

MOOR, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.